**GUST ROSENFELD P.L.C.**
One East Washington Street, Suite 1600
Phoenix, Arizona 85004-2553
602-257-7422
Amanda C. Sheridan – 027360
ASheridan@gustlaw.com
John A. Butzer – 038113
jbutzer@gustlaw.com
**Attorneys for Defendants**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Veronica Hale,

Plaintiff,

v.

Scottsdale Unified School District, a political subdivision of the State of Arizona; Joseph Olney, an individual; Steve Salcito, an individual; Sandra Satterfield, an individual; and Alexis Wilson, an individual,

Defendants.

No. 2:26-cv-03232-DJH

**MOTION TO DISMISS SECOND AMENDED COMPLAINT**

After failing to gain traction in a separate lawsuit against her former co-worker, Plaintiff filed this "Plan B" case against her former employer, Scottsdale Unified. Plan B has become Plan C and now Plan D as her Second Amended Complaint flails around adding defendants and claims searching in vain for a viable legal theory.

However, the claims in the Second Complaint lack proper legal foundation and are precluded, time-barred, and fail to state a claim upon which relief can be granted. Defendants seek dismissal of all claims, or in the alternative, remand of the declaratory judgment claim. Fed. R. Civ. P. 12(b)(6).

## I. MOTION TO DISMISS STANDARD

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (simplified). This is not a "probability requirement," but rather a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* When assessing a complaint, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

A dismissal under Rule 12(b)(6) can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balisteri v. Pacific Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

## II. BACKGROUND ALLEGATIONS[1]

This case was preceded by *Faulkner v. Hale* (Case No. CV2024-050539) which involves two former District employees suing each other. It is ongoing in Maricopa County Superior Court.[2] The original complaint in the case at bar sought to compel the District to defend and indemnify Plaintiff (and her husband) for fees they each incurred in counterclaims they each brought against Mrs. Hale's former co-worker David Faulkner and defamation claims he brought against each of them.

After serving as a substitute teacher in David Faulkner's classroom for one day, Plaintiff alleged that Mr. Faulkner had set up mirrors at the front of his classroom to inappropriately view the lower halves of students.

---

[1] For purposes of this motion only, Defendant accepts all properly pled factual allegations as if they were true.

[2] None of the Defendants in this case are a party in the *Faulkner v. Hale* case.

Four separate investigations followed. First, the school principal investigated and cleared Mr. Faulkner of wrongdoing. Second, the Scottsdale Police Department investigated and determined no crime had been committed. Third, District staff investigated Plaintiff's written complaint. The District staff's findings did not corroborate Plaintiff's assertions and the District's Governing Board upheld the staff's findings. Fourth, the Arizona Board of Education investigated and rejected Plaintiff's allegations.

Despite these investigations and their results, Plaintiff and her husband continued to spread accusations against Mr. Faulkner. Mr. and Mrs. Hale drafted email blasts and letters on their own time and using their own personal resources. Plaintiff and her husband, who are District parents, also communicated with other District parents and community members via in person meetings, text messages, calls, and emails regarding the accusations they were each making against Faulkner.

Mr. Faulkner believed Mr. and Mrs. Hales' statements were defamatory. Accordingly, he sued Plaintiff and her husband for their role in authoring and distributing these allegations. Faulkner's complaint against the Hales specifically alleges Mrs. Hale's actions he seeks a remedy for were taken in her personal capacity. Plaintiff and her husband each brought counterclaims against Mr. Faulkner.

Plaintiff and her husband were originally represented by counsel from the Quarles law firm in the Faulkner lawsuit. Initiating their Plan B, the Hales' attorney sent the District a notice of claim dated October 29, 2024, requesting that Scottsdale defend and indemnify Mr. and Mrs. Hale in the Faulkner case and, critically for purposes of the case at bar, compensate Mr. and Mrs. Hale because "SUSD has also acted unlawfully and caused harm to the Hales through its inadequate investigation of Mrs. Hale's complaint and its apparent cooperation with Mr. Faulkner." (Ex. 1 at 5). The notice also included

a settlement offer of $1,500,000 for alleged damages, of which $267,231.45 was purportedly for fees and costs related to the Faulkner lawsuit. (*Id.*)

Plaintiffs then switched counsel to the Fennemore law firm in February 2025. In April 2025, Plaintiff brought her original declaratory action against the District, alleging that the District has a duty to defend and indemnify her and her husband in *Faulkner v. Hale*, including the counterclaims each of the Hales initiated against Mr. Faulkner. No claims related to inadequate investigation or improper cooperation with Faulkner were included in the original complaint, despite the threat of such claims in the Notice of Claim.

The District denies it has any obligation to defend or indemnify Mr. or Mrs. Hale, and Maricopa County Superior Court Judge Michael D. Gordon has ruled in the *Faulkner v. Hale* case that, as to Mrs. Hale, Faulkner is only seeking a remedy for actions she took outside the course and scope of her employment. (Ex. 2). Mr. Hale was never a Scottsdale employee so only his personal actions are at issue in the Faulkner case.

For whatever reason, Plaintiff and her husband are now on their third law firm. Sensing trouble in both the Faulkner case and the original complaint in this one, Plaintiff asked permission to file an amended complaint on November 24, 2025.

On January 29, 2026, almost 18 months after submitting their notice of claim asserting the District "acted unlawfully and caused harm to the Hales through its inadequate investigation of Mrs. Hale's complaint and its apparent cooperation with Mr. Faulkner" and three years after the initial events, Plaintiff amended the complaint.

The District removed this case on May 7, 2026. After conferral before a motion to dismiss, Plaintiff again amended the complaint. Defendants now move to dismiss the SAC.

## III. ANALYSIS

The Second Amended Complaint raises three claims: (1) declaratory judgment; (2) 42 U.S.C. § 1983, and (3) Title IX retaliation. Each claim is deficient.

### A. The declaratory judgment claim should be dismissed or remanded.

#### *1. There is no legal basis for this claim.*

To begin, the SAC does not allege a legal basis for either the duty to defend or indemnify. (Doc. 10 at 27-28 ¶¶ 253-264).

The "duty to defend, which is separate from and broader than the duty to indemnify, generally arises if the complaint filed against the insured alleges facts that fall within the policy's coverage." *Teufel v. American Family Mutual Ins. Co.*, 244 Ariz. 383, 385 ¶ 11 (2018). Further, "[a]n insurer's duty to indemnify hinges not on the facts the claimant alleges and hopes to prove but instead on the facts (proven, stipulated or otherwise established) that actually create the insured's liability." *Colorado Casualty Ins. Co. v. Safety Control Co. Inc.*, 230 Ariz. 560, 568 ¶ 25 (App. 2012).

Absolutely none of this is alleged in the SAC. (Doc. 10 at 27-28 ¶¶ 253-264). Furthermore, the Hales have not sued Scottsdale's insurance carrier, which has denied coverage to both of them in the *Faulkner v. Hale* case. If the Hales' contention is the carrier's denial of coverage was improper then their claim against Scottsdale Unified rather than the carrier is misdirected. Second, the SAC does not allege a contract exists between Scottsdale and either of the Hales that includes an obligation to defend or indemnify either of them. Plaintiff merely offers her conclusion that the District has a duty (the source of which is unspecified) to do so. That alone is sufficient for dismissal, as Plaintiff does not provide a cognizable legal theory. *Balisteri*, 901 F.2d at 699.

The Second Amended Complaint refers to A.R.S. § 41-621(A)(3), which requires the Arizona Department of Administration to obtain insurance coverage for state business. *See* Doc. 10 at 28 ¶ 258. By its own language, this statute only applies to the State, it does not apply to school districts. School districts are separate, stand-alone government entities. *See* A.R.S. §§ 15-101(23); 15-326 and 15-341.

Additionally, the complaint in *Faulkner v. Hale* is unmistakable that Faulkner is only suing the Hales for acts he alleges they took in their personal capacities. The limited scope of Faulkner's complaint defeats the claim that Scottsdale must indemnify for costs they incur in defending those alleged actions.[3]

Faulkner's allegations that he is only seeking relief for actions the Hales took in their personal capacities ends the indemnification inquiry. The SAC does not allege a contract exists that obligates Scottsdale to defend or indemnify the Hales. Furthermore, as a matter of law, there is no common law obligation on Scottsdale to defend or indemnify either Mr. or Mrs. Hale in a lawsuit alleging only personal actions. The judicial finding in the *Faulkner v. Hale* case that its scope is limited to personal actions further disproves any basis for a duty to indemnify or defend.

Additionally, the SAC cannot be amended again to add a basis for either duty or a course and scope theory. Mr. Faulkner's lawsuit solely alleged acts taken outside the course of scope of Mrs. Hale's employment. (Ex. 3). This was confirmed by Judge Gordon's ruling. (Ex. 2). The SAC cannot allege facts inconsistent with the *Faulkner v. Hale* litigation or her original complaint in this action. *See Oregon Clinic, PC v. Fireman's Fund Ins. Co.*, 75 F.4th 1064, 1073 (9th Cir. 2023).

***2. There is no actual controversy.***

The SAC requests a declaratory judgment under 28 U.S.C. § 2201. (Doc. 10 at 28 ¶ 264). Plaintiff asks this Court to disagree with Judge Gordon and declare that relative to the "allegations and claims in the Faulkner lawsuit," she was "acting within the course and scope of her employment" and require the District to defend and indemnify her. (*Id.* ¶¶ 256-257, 260-263).

[3] The Hales go completely off the rails when they claim Scottsdale must also indemnify them for costs they voluntarily incurred in bringing counterclaims against Faulkner.

The DJA states that "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201(a). The "actual controversy" requirement of the DJA is the same as the "case or controversy" requirement of Article III of the Constitution. *Societe de Conditionnement en Aluminum v. Hunter Eng'g Co.*, 655 F.2d 938, 942 (9th Cir. 1981).

To determine whether an "actual controversy" exists, the Court must decide "whether the facts alleged, under all the circumstances, show that this is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). The party seeking declaratory relief bears the burden of showing whether there is an actual controversy. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. ESI Ergonomic Solutions, LLC*, 342 F. Supp. 2d 853, 862 (D. Ariz. 2004).

Plaintiff's theory for the District's alleged duty to defend and indemnify her and her husband turns not on the insurance policy, a contract between Scottsdale and the Hales or even Faulkner's allegations themselves but rather on her belief (convenient as it is at this point) that she acted within the course and scope of her employment. (Doc. 10 at 28 ¶¶ 256-57). The SAC ignores all of that and the fact that Judge Gordon of the Maricopa County Superior Court already ruled that the Faulkner case does not seek a recovery against Hale for actions she took in the course and scope of her employment. That ruling enjoys preclusive effect.

Federal courts are required to "give state court judgments the preclusive effect that those judgments would enjoy under the law of the state in which the judgment was rendered." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 993 (9th Cir. 2001). Here, issue preclusion applies, which binds a party to a decision on an issue previously litigated if:

> (1) the issue was actually litigated in the previous proceeding, (2) the parties had a full and fair opportunity and motive to litigate the issue, (3) a valid and final decision on the merits was entered, (4) resolution of the issue was essential to the decision, and (5) there is common identity of the parties.

*Campbell v. SZL Props., Ltd.*, 204 Ariz. 221, 223 (App. 2003).

If the first four elements are satisfied, Arizona law permits defensive use of issue preclusion, which occurs when "a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff previously litigated unsuccessfully against another party." *Id.*

In the *Faulkner v. Hale* case, Judge Gordon explicitly held that the allegations in that case were made for conduct "outside the scope of employment." (Ex. 2 at 2)[4]. The court also held that "the mandatory reporting provisions do not apply" in that case. (*Id.*)

This ruling stemmed from the court's denial of competing motions to dismiss. In Mr. Faulkner's First Amended Complaint, he explicitly seeks to recover damages for the alleged defamatory actions Plaintiff made *outside* the course and scope of her employment. (Ex. 3 at 16, 17 ¶ 192, 22, 37 ¶ 402).

And in that case, the Hales defense included the contention that Mrs. Hale's actions were made within the course and scope of her employment. This issue was argued extensively in the competing briefs. In ruling on the motions to dismiss, the state court explicitly put this issue to rest – any actions Mrs. Hale may have taken in her former role as a substitute teacher for Scottsdale are not the basis of Faulkner's claims. Accordingly, the issue was actually litigated after a full and fair opportunity and motive to litigate the issue. The court's ruling constitutes a final decision on the merits, and the resolution of the issue was essential to the decision. That issue should not be relitigated before this court.

---

[4] The Court may take judicial notice of matters of public record without converting this motion to dismiss into a motion for summary judgment. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 999 (9th Cir. 2018).

Plaintiff demands the District defend and indemnify her and her husband in the *Faulkner v. Hale* lawsuit. But that lawsuit only alleges harm from actions that, as confirmed by the superior court, were personal in nature and fell outside the course and scope of her employment. Plaintiff may not ignore the scope of Faulkner's complaint, or Judge Gordon's ruling.

The ruling confirms that the District is not required to defend or indemnify a former employee (or her spouse) for their private conduct. It is entitled to preclusive effect. This issue has been resolved, and therefore there is no real, substantial, and immediate controversy. The Court may dismiss or remand this declaratory judgment request to state court.

#### ***3. If Count One is not dismissed, the factors and considerations weigh in favor of remand.***

When an action otherwise satisfies subject matter jurisdiction requirements, district courts still have discretion when deciding whether to retain or remand an action brought pursuant to the DJA. *757BD LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 330 F. Supp. 3d 1153, 1158-60 (D. Ariz. 2016); *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942). "Even if the district court has subject matter jurisdiction, it is not required to exercise its authority to hear the case." *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 802 (9th Cir. 2002).

On this question, the court's discretion is guided by the three factors in *Brillhart*. When determining whether to retain jurisdiction over the action, the district court should: (1) avoid needless determination of state law issues; (2) discourage litigants from filing declaratory relief actions as a means of forum shopping; and (3) avoid duplicative litigation. *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998).

These factors, however, are not exhaustive. *Id.* The court may also consider "whether the declaratory action will settle all aspects of the controversy; whether the

declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; whether the use of a declaratory action will result in entanglement between the federal and state court systems" as well as the convenience of the parties and the availability and convenience of other remedies. *Id.* at 1225 n.5.

First, prior to the most recent amendment, the declaratory judgment "claim" was a state law issue under the Arizona Declaratory Judgment Act, A.R.S. § 12-1831. (Doc. 13 at 30 ¶ 264). The critical facts underlying this declaratory judgment action have already been resolved by a state court. Plaintiff raises this claim here to seek a re-determination of state law issues. For that reason alone, if Count One survives, it can be remanded to the Superior Court.

Second, there is no forum shopping from Scottsdale occurring here. Defendants exercised their ability to remove once the federal claims were added. Third, there is also admittedly no duplicative litigation risk. There is no parallel action pending in state court.

That said, the other remaining factors weigh in favor of remand. This declaratory action will not settle all aspects of the controversy, as Plaintiff has elected to bring two new claims. It will also not serve a useful purpose in clarifying the legal relations, as that work has already been completed by the Superior Court. Plaintiff merely seeks to use this Court as a Plan B to change that decision. That fact will result in entanglement between the federal and state court systems.

At bottom, neither Plaintiff nor her husband has a right to indemnity or defense from the District against the claims Mr. Faulkner is pursuing against her and her husband arising from their private conduct (or the counterclaims they are pursuing against Mr. Faulkner). For that reason, Defendants request dismissal, or in the alternative, remand of this claim.

**B. Plaintiff fails to state a section 1983 claim.**

Next, Plaintiff contends that the individual defendants violated her free speech rights and are therefore liable under 42 U.S.C. § 1983. (Doc. 10 at 29-30 ¶¶ 270-71). However, this claim is time-barred, and the individual defendants enjoy qualified immunity.

***1. The claim is time-barred.***

"State law determines the statutes of limitations in § 1983 suits." *Cabrera v. City of Huntington Park*, 159 F.3d 374, 379 (9th Cir. 1998). In Arizona, that is two years.[5] A.R.S. § 12-542; *see also TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). Federal law governs when the claim accrues, which is when the plaintiff "knows or has reason to know of the injury which is the basis of action." *Elliot v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994) (internal citations omitted).

As part of the *Faulkner v. Hale* case, the Hales (through their second set of attorneys) served a subpoena duces tecum on the District. The District responded on May 30, 2025. Many of the records produced were already in Plaintiff's possession. Nevertheless, Plaintiff now conveniently and generically claims she did not become aware of the facts underpinning her § 1983 and Title IX claims until she received the subpoena response. (Doc. 10 at 26 ¶ 243). That is false, and the SAC does not sufficiently allege such facts.

In any event, that contention is irrelevant. Plaintiff threatened to file suit in her October 2024 Notice of Claim for claims related to the alleged inadequate investigation and allegedly improper cooperation with Faulkner. (Ex. 1 at 5). The SAC concedes this critical point, stating that "[The Notice of Claim] included facts relevant to her claim under 42 U.S.C. § 1983." (Doc. 10 at 26 ¶ 242). The Notice of Claim repeatedly refers

[5] The claims against the individual defendants were first made in the SAC dated April 10, 2026. Any claims accruing before April 10, 2024, are barred.

to actions allegedly occurring in May and June 2023 of which Plaintiff was contemporaneously aware. (Ex. 1). Those events are well past the statute of limitations.

The SAC also confirms the § 1983 claims accrued before April 2024. (*See* Doc. 10 at 5 ¶ 37, 6 ¶ 47, 9 ¶ 75) (Hale reported her concerns in May 2023); *Id.* at 10 ¶¶ 87-88 (Scottsdale Police Department and SUSD informed Hale in June 2023 of investigation results and neither would be moving forward with additional actions); *Id.* at 10 ¶¶ 90-91 (Hale claims she learned in August 2023 that Olney and Salcito "directly interfered with the investigation"); *Id.* at 11 ¶ 103 (Hale met with Wilson on June 2, 2023, and "express[ed] concern about SUSD's investigation."); *Id.* at 18 ¶ 163 (Hale filed a complaint against Faulkner for his actions towards her with the Arizona Department of Education on August 7, 2023). Additionally, Hale's first demand that the District defend and indemnify her was made on April 4, 2024 (Ex. 1 at 2).

Plaintiff knew the who and the what of her claim as early as May 2023 but no later than April 4, 2024. She chose not to act on it. Here, even in the most generous interpretation, the two-year statute of limitations occurred no later than the summer of 2023.

There is also no equitable tolling. Any such tolling is "reserved for 'extreme cases' and is 'applied sparingly.'" *Franco*, 2020 WL 7388489, at *4 (quoting *Scholar v. Pac. Bell*, 963 F.2d 264, 267 (9th Cir. 1992)). It only applies if "despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of the claim." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995). Plaintiff could have sought the records she received in May 2025 much earlier and within the statute of limitations via a public records request, a subpoena or other discovery. Instead, Plaintiff (and all her prior attorneys) chose to sit on her alleged § 1983 and Title IX retaliation claims despite the threats in the Notice of Claim. That falls far below the required due diligence.

In addition to Plaintiff having this information available to her (and her first two law firms) for 18 months, she and her third law firm have had it for five months. Each counsel let the statute of limitations run because, until very recently, this was a state court declaratory judgment action.

***2. The individual defendants must be dismissed.***

The SAC attempts to allege a § 1983 claim against each of the individual defendants in their official *and* individual capacities for retaliating against Plaintiff for exercising her right to free speech. (*See* Doc. 10 at 29 ¶ 269). To state a claim for relief under § 1983, courts require plaintiffs to "plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).

The SAC's allegations make only passing reference to each individual's interactions with Plaintiff. (*See, e.g.*, Doc. 10 at 10 ¶¶ 84, 87-89; 11 ¶¶ 91-108; 11-12 ¶¶ 103-108; 13 ¶¶ 116-123; 14 ¶ 131-33; 19 ¶ 170-171; 24 ¶ 222). But there is no "showing of personal participation in the alleged rights deprivation." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). A flawed internal investigation, which Plaintiff alleges, has nothing to do with Plaintiff's free speech rights, which were never infringed. At every turn, Plaintiff spoke out and was heard about what she alleged was Mr. Faulkner's misconduct. She was then sued by Mr. Faulkner. The SAC does not sufficiently tie any specific "mistakes" in the investigation to Plaintiff's free speech rights or to any of the individual defendants.

Moreover, the individual defendants are protected by qualified immunity. The application of this doctrine is resolved "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). An official is entitled to qualified immunity unless the plaintiff can show (1) their conduct violated a constitutional right; and (2) that right was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223,

230-32 (2009). "Both prongs entail questions of law that [the court] may answer in either order." *Bonivert v. City of Clarkston*, 883 F.3d 865, 872 (9th Cir. 2018).

Qualified immunity is also "an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). And the doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The SAC fails both prongs. To state a claim for a First Amendment violation, a plaintiff must plead facts showing that the defendant's conduct "deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct." *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (quoting *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994)). As stated, the SAC fails to show how *any* of the individual defendants' conduct violated this constitutional right. *Green v. City & Cnty. of San Francisco*, 751 F.3d 1039, 1051 (9th Cir. 2014). Instead, the SAC makes conclusory allegations about the investigations.

Plaintiff also conflates the allegations relating to the individual defendants together in her attempt to state her § 1983 claim. But each government official is only responsible for his or her actions, not the actions of others. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Plaintiff's attempt to lump the individual defendants' actions together and declare them unconstitutional fails.

The SAC also fails to satisfy the "clearly established" prong. To show a clearly established right, Plaintiff must point to parallel or comparable fact pattern to alert each of the individual defendants that their individual actions would violate an existing constitutional right. *Fogel v. Collins*, 531 F.3d 824, 833 (9th Cir. 2008). That determination is a question of law. *Bonivert*, 883 F.3d at 872. But the SAC fails to provide a comparable fact pattern of any of the individuals, let alone all of them. Instead, it generically alleges that the individual defendants "retaliated against Plaintiff for

exercising her constitutional right to free speech." (Doc. 10 at 30 ¶ 274). Again, no free speech right is connected to Plaintiff's allegations regarding the investigation.

Accordingly, the SAC fails both the constitutional violation and clearly established prongs of qualified immunity. The individual defendants took proper actions that did not constitute a violation of Plaintiff's free speech rights. Each individual defendant is far from "plainly incompetent" and there is no showing that any of them "knowingly violate[d] the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). Qualified immunity provides an immunity from suit for each of the individual defendants.

**C. Plaintiff fails to state a Title IX retaliation claim.**

Lastly, Plaintiff alleges a Title IX retaliation claim against the District. (Doc. 10 at 31-33 ¶¶ 284-295).

***1. This claim is untimely.***

A Title IX retaliation claim also holds a two-year statute of limitations, as it is subject to Arizona's statute of limitations for personal injury actions. *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006).

Here, the SAC does not contend any of the allegedly "new" information from the subpoena response relates to this claim. In fact, the SAC states that the "above-described adverse actions began the same day Plaintiff first reported the gender-based harassment." (Doc. 1-3 at 25 ¶ 230). That was in May 2023. Accordingly, this claim accrued in May 2023 but was not brought until April 2026. Plaintiff is far outside the statute of limitations.

There is also no continuing tort or estoppel to save this claim. Plaintiff alleges that the District "failed to launch a formal Title IX investigation." (Doc. 1-3 at 25 ¶ 228). This alleged failure occurred, if at all, in summer 2023. That was the beginning and end of any accrual. Further, Plaintiff had all the information necessary to determine the

existence of the claim at that time. She simply chose not to bring it. Her time to do so has passed.

***2. This claim is improper.***

To state this claim, Plaintiff "must allege that (1) the plaintiff participated in a protected activity, (2) the plaintiff suffered an adverse action, and (3) there was a causal link between the protected activity and the adverse action." *Grabowski v. Arizona Bd. of Regents*, 69 F.4th 1110, 1121 (9th Cir. 2023) (citing *Emeldi v. Univ. of Oregon*, 698 F.3d 715, 725-26 (9th Cir. 2012)).

Plaintiff simply alleges that she reported sex-based discrimination to the District and that the District failed to follow up with a Title IX investigation. (Doc. 10 at 32 ¶¶ 288-290). But this claim requires retaliation based on complaints of sex discrimination, not Title IX violations. *See Carrillo v. Pima Comm. College Dist.*, No. CIV 25-034-TUC-CKJ, 2025 WL 1960046, at *11 (D. Ariz. June 30, 2025).

This fact is made clear by examining *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 176-77 (2005). In *Jackson*, our Supreme Court reasoned:

> Moreover, retaliation is discrimination "on the basis of sex" because it is an intentional response to the nature of the complaint: an allegation of sex discrimination. We conclude that when a funding recipient retaliates against a person because he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex.…

*Id.* at 174. And in *Carrillo*, another Arizona district court judge considered this language and held: "The Court is unaware of any case that permits a Title IX claim based on complaints of Title IX violations. Rather, when the holding in *Jackson* is considered together with the plain language of Title IX, it is apparent the alleged retaliation must still fall within the scope of 20 U.S.C. 1681(a)." That scope is discrimination based on sex. 20 U.S.C. § 1681(a); *see also Carrillo*, 2025 WL 1960046, at *11.

Here, Plaintiff simply asserts that the District failed to launch a Title IX investigation. (Doc. 10 at 32 ¶ 290). This allegation does not present a cognizable claim,

as it complains that a Title IX investigation process was not followed, not any retaliation for a report of sex discrimination. *Carrillo*, 2025 WL 1960046, at *11. Simply put, Plaintiff has not sufficiently alleged retaliation.

To the extent she allegations retaliation, Plaintiff asserts that the District subjected her to adverse actions. (Doc. 10 at 32 ¶ 291). Plaintiff tries to connect her alleged report to retaliation, including the District's refusal to indemnify and defend her in *Faulkner v. Hale*. (*Id.*) Of course, this is not an adverse action. Plaintiff bears the burden of proving she is entitled to indemnification and defense. There are also no supporting facts for her allegations of defamation, false light, or constructive discharge.

### D. Amendment is futile.

Denial of leave to amend is permissible where further amendment would be futile. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248-49 (9th Cir. 1995) (per curiam). Here, Plaintiff has already amended her complaint and still has not set forth any basis for a duty to defend or indemnify. Plaintiff's § 1983 and Title IX claims are also barred by the statute of limitations and are insufficiently plead. The SAC fails to state a claim.

Further amendments cannot change the facts that were established three years ago. Plaintiff has not set forth any basis for liability and cannot again amend her complaint to change the past. These defects cannot be cured.

## IV. CONCLUSION

Plaintiff's Second Amended Complaint should be dismissed with prejudice.

RESPECTFULLY SUBMITTED this 22nd day of June, 2026.

GUST ROSENFELD P.L.C.

By */s/ John A. Butzer - 038113*
Amanda C. Sheridan
John A. Butzer
Attorneys for Defendants

**CERTIFICATE OF CONFERRAL**

Pursuant to the LRCiv. 12.1(c) and the Court's Order (Doc. 3), I certify that I conferred with Plaintiff's counsel in writing and by telephone to determine whether another amendment to the Second Amended Complaint could cure the defects described in this Motion. We were unable to agree that the pleading is curable by amendment.

RESPECTFULLY SUBMITTED this 22nd day of June, 2026.

GUST ROSENFELD P.L.C.

By *\/s/ John A. Butzer - 038113*
Amanda C. Sheridan
John A. Butzer
Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing with electronic transmittal to the following:

Alden A. Thomas
Emma J. Freeburg
**Jaburg & Wilk, P.C.**
1850 N. Central Avenue, Suite 1200
Phoenix, AZ 85004
aat@jaburgwilk.com
ejf@jaburgwilk.com
*Attorneys for Plaintiff*

*/s/ Pauletta J. Seitz*