# EXHIBIT 1

Quarles

One Renaissance Square
Two North Central Avenue
Suite 600
Phoenix, Arizona 85004-2322
602-229-5200
Fax 602-229-5690
www.quarles.com

Attorneys at Law in
Chicago
Denver
Indianapolis
Madison
Milwaukee
Minneapolis
Naples
Phoenix
San Diego
St. Louis
Tampa
Tucson
Washington, D.C.

Jeffrey H. Wolf
Partner
Writer's Direct Dial: 602-229-5643
Writer's Fax: 602-417-2991
E-Mail: Jeffrey.Wolf@quarles.com

October 29, 2024

**VIA PROCESS SERVER**

Dr. Libby Hart- Wells, President
Zach Lindsay, Vice President
Julie Cieniawski, Board Member
Amy Carney, Board Member
Carine Werner, Board Member
**Scottsdale Unified School District Governing Board**
8500 E. Jackrabbit Road
Scottsdale, AZ 85250

Nicholas B. Buzan
General Counsel
**Scottsdale Unified School District**
8500 E. Jackrabbit Rd.
Scottsdale, AZ 85250
nbuzan@susd.org

Dr. Scott A. Menzel
**Scottsdale Unified School District Superintendent**
8500 E. Jackrabbit Road
Scottsdale, AZ 85250

**VIA FIRST CLASS U.S. MAIL**

Robert D. Haws
**Gust Rosenfeld P.L.C.**
1 E. Washington, Suite 1600
Phoenix, Arizona 85004
rhaws@gustlaw.com

Christopher S. Welker
Managing Partner
**Wright Welker & Pauole PLC**
10429 South 51st Street, Suite 285
Phoenix, Arizona 85044
cwelker@wwpfirm.com

**Re: VERONICA AND MATTHEW HALE'S NOTICE OF CLAIM AGAINST SCOTTSDALE UNIFIED SCHOOL DISTRICT PURSUANT TO A.R.S. § 12-821.01.**

Responsible Public School: Scottsdale Unified School District ("SUSD")

Claimants: Veronica and Matthew Hale

Dear Scottsdale Unified School District Governing Board:

**INTRODUCTION**

Quarles & Brady represents Veronica and Matthew Hale in the matter *David Faulkner v. Veronica Hale & Matthew Hale*, Case No. CV2024-050539 (the "Lawsuit"). The Lawsuit arose after Veronica Hale, acting within the scope of and pursuant to her duties as a substitute teacher, reported potential misconduct by David Faulkner, a former teacher employed by the district. On April 4, 2024, Veronica Hale demanded that SUSD defend and indemnify the Hales in connection with the Lawsuit. The Hales' demand was forwarded to SUSD's insurance carrier, the Arizona School Risk Retention Trust, Inc. (the "Trust"). On May 3, 2024, the Trust denied the Hales' demand, asserting that no coverage was available based on the unverified allegations contained in Mr. Faulkner's complaint, which the Trust wrongfully accepted as fact.[1] In a letter dated May 21, 2024, directed to SUSD's General Counsel Nicholas B. Buzan, the Hales again demanded that SUSD defend and indemnify the Hales pursuant to the Hales' implied right of indemnity, regardless of the availability of insurance coverage. On June 4, 2024, SUSD wrongfully denied the demand.

Pursuant to A.R.S. § 12-821.01, this letter provides SUSD with fair notice of the Hales' claim and the bases therefore, along with providing a specific amount for which the claim can be settled. This letter is being served on SUSD's entire governing board pursuant to A.R.S. § 12-821.01 and Arizona Rule of Civil Procedure 4.1(h). *See Batty v. Glendale Union High School Dist. No. 205*, 221 Ariz. 592, 595 (App. 2009).[2] Please consider this letter the Hales' Notice of Claim.

---

[1] For example, the Trust asserted that Ms. Hale was not a "Covered Person' under SUSD's Coverage Agreement because Mr. Faulkner "expressly stated that 'the complaint only seeks to recover for torts committed outside of the scope of [Ms. Hale's] employment." It is extremely concerning that both the Trust and SUSD would blindly accept Mr. Faulkner's allegations at the expense of Ms. Hale, who has provided SUSD substantial evidence showing that, at all times relevant to the Lawsuit, Ms. Hale was acting for the benefit of SUSD and in accordance with her duties as a substitute teacher.

[2] In an abundance of caution, this Notice is also being served on SUSD's superintendent, who is expressly designated as SUSD's "chief executive officer" in SUSD's Governing Board Policies, and on SUSD's General Counsel Nicholas Buzan, pursuant to SUSD's Delegation of Authority to

Failure to agree to defend and fully indemnify the Hales or to respond to this Notice of Claim will result in the Hales filing a complaint for declaratory relief and damages caused by SUSD's refusal to provide a defense and indemnify them and for other damages the Hales have suffered due to SUSD's misconduct in handling Mrs. Hale's complaint against Mr. Faulkner.

## FACTUAL BASIS FOR CLAIM

Mrs. Hale was employed by SUSD as a substitute teacher. On May 10, 2023, she was substituting in Mr. Faulkner's sixth grade class at Cocopah Middle School. While working in Mr. Faulkner's class, Mrs. Hale observed two mirrors leaned against the wall at the front of the classroom, and that due to the placement of the mirrors, it was possible to see the lower portions of the students beneath their desks. She further observed that only girls were seated in the first two rows of desks. Mrs. Hale became immediately concerned about the safety of the students in Mr. Faulkner's classroom. She understood her statutory obligation to report the situation in Mr. Faulkner's classroom, and she complied with that obligation by reporting the issue to the school principal. *See* A.R.S. §§ 15-514 and 13-3620. This duty was also expressly set forth in the written policies for SUSD's substitute teachers. *See* SUSD's Substitute Handbook, 2022–2023 School Year, revised December 9, 2022. Following Mrs. Hale's reporting of the situation, and after visiting Mr. Faulkner's classroom, the principal himself observed that from certain angles the mirrors could be used to view students from the waist down and admitted that this was inappropriate. Unfortunately, shortly after Mrs. Hale reported what she observed, the mirrors were removed from Mr. Faulkner's classroom without first being photographed. Because of the removal of the evidence corroborating Mrs. Hale's report, no corrective action was taken against Mr. Faulkner. SUSD's inaction compelled Mrs. Hale to escalate her report. That Mrs. Hale was forced to repeatedly escalate her concerns and speak out about Mr. Faulkner's conduct due to SUSD's failure (or outright refusal) to properly investigate and take appropriate action against Mr. Faulkner does not render her conduct out the scope of her employment. **All** of Mrs. Hale's actions as alleged in the Lawsuit were taken for the benefit of SUSD, and any statements she made outside of "official" channels, such as the KEB Complaint and statements made to SUSD parents were made necessary solely by SUSD's grossly inadequate response her original reporting of Mr. Faulkner's perceived conduct in his classroom. SUSD cannot legitimately claim that the actions Mrs. Hale took to *protect SUSD students* were not taken to further SUSD's interests.

On February 7, 2024, Mr. Faulkner filed the Lawsuit, which alleges defamation, false light invasion of privacy, and intentional infliction of emotional distress based on the statements Mrs. Hale made pursuant to her reporting obligations and in relation to the resulting investigation and administrative action. Since filing the Lawsuit, Mr. Faulkner has undertaken a concerted effort to retaliate against and punish the Hales for Mrs. Hale complying with her mandatory employment obligations. For example, after the Hales moved to dismiss the Lawsuit because Mr. Faulkner failed to timely serve a notice of claim under A.R.S. § 12-821.01 and because Mrs. Hale is immune from civil liability pursuant to Arizona's Mandatory Reporting Statutes, A.R.S. §§ 15-514 and 13-3620, Mr. Faulkner then amended his complaint to add blatantly false statements and unfounded

---

Accept Service of Process on Behalf of the Governing Board, approved by SUSD's Governing Board during its regular meeting on January 19, 2021.

misrepresentations that he has fabricated in an attempt to plead around the Hales' motions to dismiss. Mr. Faulkner, through his counsel, filed an amended complaint that included 245 additional paragraphs, in response to which the Hales filed new motions to dismiss, which remain under advisement following oral argument on July 19, 2024.

All of Mrs. Hale's actions following her observation of the mirrors in Mr. Faulkner's classroom were taken pursuant to her mandatory reporting obligations as provided by Arizona law and SUSD's Substitute Handbook. There is no legitimate basis to argue otherwise. Mr. Faulkner himself did not allege that Mrs. Hale was acting outside the course and scope of her employment with SUSD until he realized that Arizona's Notice of Claim statute applied to lawsuits against public school teachers, that the time to serve Mrs. Hale with a notice of claim had passed, and that he had to argue that Mrs. Hale was not acting within the scope of her employment as a substitute teacher in order to avoid dismissal of the Lawsuit. These self-serving statements do not negate the fact that, at all times relevant to the Lawsuit, Mrs. Hale was acting in her capacity as a substitute teacher for SUSD. It is especially concerning that SUSD would take Mr. Faulkner's fabricated allegations as truth over the word of Ms. Hale considering that SUSD was aware that the *first time* Mr. Faulkner "expressly stated that 'the complaint ***only*** seeks to recover for torts committed outside of the scope of [Ms. Hale's] employment" was "in response to Ms. Hale's motion to dismiss [Mr. Faulkner's] original Complaint," in which the Hales asserted that Mr. Faulkner's claim was barred due to Mr. Faulkner's failure to timely file and serve a Notice of Claim.

Further, SUSD's own fault in causing this litigation cannot be ignored. SUSD's failure to properly investigate Mrs. Hale's complaint necessitated all of her subsequent actions that form the basis of the Lawsuit. SUSD mishandled Mrs. Hale's complaint from the very beginning, including by wrongfully revealing her name to Mr. Faulkner and by instructing Mr. Faulkner to remove the mirrors from the classroom without first taking photographs of the mirrors, which destroyed evidence corroborating Mrs. Hale's complaint. The School Resource officer at Cocopah Middle School was not informed about Mrs. Hale's complaint until several days after the complaint was made, at which point the mirrors had already been removed from the classroom. Further, the Hales have discovered new evidence suggesting that SUSD misrepresented that Mr. Faulkner had never received any complaints against him until Mrs. Hale's complaint, and that SUSD in fact knew Mr. Faulkner posed a risk to students months before Mrs. Hale observed the mirrors in his classroom. This, coupled with evidence that Mr. Faulkner's counsel is actively assisting and supporting SUSD in denying Mrs. Hale's claim for indemnity, suggests that SUSD is intentionally acting against Mrs. Hale to protect Mr. Faulkner and cover up its own failures responding appropriately to complaints of potential teacher misconduct.

## LEGAL BASIS OF CLAIMS

The Hales' claim against SUSD primarily arises out of an implied right of indemnity. As an employee and agent of SUSD, Mrs. Hale has an implied right to be indemnified by SUSD for liability arising out of actions she took within the course and scope of her employment and for her

attorneys' fees incurred in defending the Lawsuit. *See INA Ins. Co. of North Am. v. Valley Forge Ins. Co.*, 150 Ariz. 248, 253, 256 (App. 1986); Restatement (Second) of Agency § 439 ("A principal is subject to a duty . . . to indemnify [an agent] for . . . expenses of defending actions by third persons brought because of the agency's authorized conduct . . . ."). Conduct is within the scope of employment if it is "at least in part[] motivated by a purpose to serve the master rather than solely to serve personal motives unconnected with the master's business." *State, Dept. of Admin. v. Schallock*, 189 Ariz. 250, 258 (1997). Although all of Mrs. Hale's actions at issue in this case were proper, conduct may be within the course and scope of employment even if the employee's actions are "improper" and intended to serve the employee's "personal desires . . . if those actions are incidental to the employee's legitimate work activity." *Dube v. Desai*, 218 Ariz. 362, 365–66, ¶ 11 (App. 2008). Mrs. Hale has a clear and unmistakable right to be indemnified by SUSD for the costs she incurs in defending against the Lawsuit, as the Lawsuit arises from conduct she took in service to SUSD and in furtherance of her legitimate employment activities. SUSD wrongfully denied the Hales' demand to defend them in the Lawsuit and indemnify them for potential liability arising out of the Lawsuit. SUSD has also acted wrongfully and caused harm to the Hales through its inadequate investigation of Mrs. Hale's complaint and its apparent cooperation with Mr. Faulkner, at Mrs. Hale's expense.

## DAMAGES

The Hales demand that SUSD defend and indemnify them for their costs incurred in defending against the Lawsuit. SUSD's failure to defend and indemnify the Hales, and SUSD's own misconduct in handling Mrs. Hale's complaint have caused substantial harm to Mrs. Hale and her husband. As of the date of this letter, the Hales have incurred $267,231.45 in attorneys' fees and costs related to the Lawsuit. The Hales will continue to incur additional attorneys' fees and costs throughout the duration of the Lawsuit. The full extent of the Hales' exposure in connection with the Lawsuit and SUSD's corresponding indemnification obligation has not been determined and will not be determined until the Lawsuit's conclusion. For purposes of § A.R.S. § 12-821.01 and this Notice of Claim only, the Hales are willing to accept the sum of $1,500,000.00 as full and final settlement of this dispute. This amount constitutes a good faith estimate of the Hales' damages as of the date of this Notice of Claim. The Hales' actual damages could exceed this amount. This offer shall remain open for sixty (60) days pursuant to A.R.S. § 12-821.01(E).

The Hales reserve all rights and remedies they have in connection with this Notice and their claims against SUSD. We look forward to hearing from you.

Very truly yours,

Jeffrey H. Wolf

# EXHIBIT 2

Clerk of the Superior Court
*** Electronically Filed ***
12/03/2024 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2024-050539 11/22/2024

HONORABLE MICHAEL D. GORDON

CLERK OF THE COURT
M. Dern
Deputy

DAVID FAULKNER JESSE R RITCHEY

v.

VERONICA HALE, et al. JEFFREY H WOLF

JUDGE GORDON

MINUTE ENTRY

Courtroom 402 – Central Court Building

9:00 a.m. This is the time set for a Status Conference regarding *Defendants' Motion to Dismiss Plaintiff's First Amended Complaint on Behalf of Defendant Matthew Hale* and *Motion to Dismiss Plaintiff's First Amended Complaint on Behalf of Veronica Hale*, both filed May 13, 2024 ("Motions to Dismiss"). Plaintiff, David Faulkner, is not present but is represented by counsel of record, Jesse R. Ritchey, and co-counsel, Jeff Silence. Defendants, Matthew and Veronica Hale, are present and represented by counsel of record, Jeffrey H. Wolf, and co-counsel, Kristin Nicole Leaptrott.

A record of the proceedings is made digitally in lieu of a court reporter.

Discussion is held regarding the Motions to Dismiss. The Court informs the counsel and parties that it will be prepared to rule on the Motions to Dismiss later this afternoon. Upon stipulation,

**IT IS ORDERED** that Court shall reconvene virtually with counsel and parties present, today at **3:00 p.m.**

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2024-050539 11/22/2024

9:04 a.m. Court stands at recess.

3:03 p.m. Court reconvenes with respective parties and counsel present.

A record of the proceedings is made digitally in lieu of a court reporter.

The Court has reviewed both Motions to Dismiss, the Responses, and Replies.

**THE COURT FINDS** that Defendants have not established *prima facie* proof that the legal action was substantially motivated by a desire to deter, retaliate against, or prevent the lawful exercise of constitutional right. Defendants have not met the burden and the SLAPP statute is not applicable and does not provide a defense in this case. Accordingly,

**IT IS ORDERED** denying both Motions to Dismiss in their entirety.

**IT IS FURTHER ORDERED** lifting the stay in the matter and allowing discovery to proceed.

**THE COURT FURTHER FINDS** that the allegations in this case are intended to focus on claims that were made outside the scope of employment and are being made to allege claims under which the notice of claim statute does not apply.

**THE COURT FURTHER FINDS** that the mandatory reporting provisions do not apply or provide a defense in this case.

**THE COURT FURTHER FINDS** that the allegations that there is a concert of activity that took place sufficiently connect Mr. Hale to Mrs. Hale's conduct with respect to the defamation claim.

**THE COURT FURTHER FINDS** that the conduct alleged is sufficiently outrageous to survive an intentional infliction of emotional distress claim.

**IT IS FURTHER ORDERED** that the parties meet and confer and provide the Court with a Joint Report and proposed Scheduling Order so that the case may move forward in due course.

3:08 p.m. Matter concludes.

# EXHIBIT 3

Clerk of the Superior Court
*** Electronically Filed ***
L. Sanchez, Deputy
4/22/2024 3:18:52 PM
Filing ID 17697241

**Silence Law Group**
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028
**Jeffrey Silence** (029143)
Direct Dial: (602) 932-8358
Email: jeff@silencelaw.com
**Jesse R. Ritchey** (034650)
Direct Dial: (602) 932-8747
Email: jesse@silencelaw.com
*Attorneys for Plaintiffs*

**SUPERIOR COURT OF ARIZONA**

**COUNTY OF MARICOPA**

| | |
|---|---|
| David Faulkner, a married individual,<br><br>Plaintiff,<br><br>v.<br><br>Veronica Hale and Matthew Hale, a married couple<br><br>Defendants. | Case No. CV2024-050539<br><br>**FIRST AMENDED COMPLAINT**<br><br>(Assigned to the Hon. Michael Gordon) |

Plaintiffs David Faulkner files this First Amended Complaint, pursuant to Ariz. R. Civ. P. 15(a)(1)(B), and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff David Faulkner is a resident of the State of Arizona and is a resident of Maricopa County.

2. Plaintiffs David Faulker is a married individual.

3. Defendant Veronica Hale is a resident of the State of Arizona and is a resident of Maricopa County.

4. Defendant Veronica Hale is being sued in her individual capacity and not as an employee of Scottsdale Unified School District or any other government entity.

5. Defendant Matthew Hale is a resident of the State of Arizona and is a resident of Maricopa County.

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

6. Mr. Hale is being sued for his individual acts and for community property purposes.

7. Mr. Hale is not an employee of any government entity.

8. This Court has jurisdiction over this matter under A.R.S. § 12-123.

9. Venue is proper in this Court because the acts and omissions giving rise to the Complaint occurred in Maricopa County.

**GENERAL ALLEGATIONS**

10. In Arizona, it is common for school districts to use private companies, such as ESI Education Services, to provide substitute teacher services.

11. These companies employ substitute teachers and then “lease” those substitute teachers to the school district.

12. The substitute teachers are employees of the company and not employees of the school district.

13. Upon information and belief, Scottsdale Unified School District uses the services of one of these companies to “lease” substitute teachers.

14. In 2016, David began working as a teacher at Cocopah Middle School in the Scottsdale Unified School District.

15. As a teacher at Cocopah Middle School, David does not have control over the affairs of the school.

16. David does not set policy for Cocopah Middle School or Scottsdale Unified School District.

17. Instead, the curriculum and material David is expected to teach is set by his superiors.

18. While working at Cocopah Middle School, David taught sixth grade social studies.

19. In addition to working as a teacher, David also coached junior varsity volleyball, cross-country, flag football, and soccer.

20. David also led Cocopah Middle School’s National Juniors Honor Society.

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

21. For over 7 years, David continued teaching and coaching at Cocopah Middle School.

22. During that time, David never received a single complaint against him for any reason.

23. In fact, many parents and students complimented David's teaching style through holiday cards or end of year letters.

24. David also received exemplary reviews and evaluations from his superiors, peers, teachers, and students.

25. One of the reasons David was so popular amongst students was that he listened to their concerns and altered his teaching style based on their feedback.

26. For example, over the years students have expressed their reticence to a teacher standing behind them or looking over their shoulders.

27. As a result of this feedback, David has refrained from walking in the aisles between desks.

28. Instead, David opted to stay at the front of the class with this back to the whiteboard.

29. Students have also advised David verbally and through email that they preferred to select their own seats in the classroom.

30. As a result of this feedback, David frequently allowed the students to change their seats per their request in all his classes.

31. David changed the students' seating on average every one to two weeks to accommodate the student's preference.

32. Over the years, David would bring in various accessories from home to decorate his classroom in accordance with Scottsdale Unified School District policy.

33. For years, David had large lamps, framed artwork, maps, globes, posters, and a mirror in his classroom.

34. Often David would move these decorations around the classroom.

35. Prior to the events giving rise to this Complaint, David never received any complaints about the mirror in his classroom.

36. In late April 2023, David acquired a second mirror and brought it to school.

37. The mirror's size and weight prevented David from immediately hanging it on the wall.

38. David placed the mirror in the front left-hand corner of the classroom behind a lectern, and behind the other mirror that was already in the classroom.

39. David intended to hang the large mirror once he secured the necessary hardware.

40. Later, when the lectern was needed for classroom purposes, David leaned both mirrors on the wall at the front of the class, sitting below the whiteboard.

41. The mirrors were placed in this location to be clear of any foot traffic.

**Scottsdale Unified School District Implemented Confidentiality Policies, Which Ms. Hale Ignored When Making Her Accusations**

42. The only individuals authorized to make statements to the media or general public in the Scottsdale Unified School District are the Superintendent; the Public Information Officer; the backup Information Officer; athletic coaches; club leaders; and principals.

43. Ms. Hale does not fall into any of these categories.

44. But under any circumstance all Scottsdale Unified School District employees are legally bound to maintain confidentiality regarding accusations of employee or student misconduct pursuant to Arizona law and Scottsdale Unified School District policy and procedure.

45. Scottsdale Unified School District has policies governing how employees are required to report incidents of inappropriate behavior, which are outlined in Scottsdale Unified School District's Section G – Personnel.

46. These include specific forms that employees must use to report misconduct.

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

**Wednesday May 10, 2023**

47. On May 10, 2023, David took a half day off to take his sick dog to the veterinarian.

48. Ms. Hale is a substitute teacher and a parent of a Cocopah student.

49. Upon information and belief, pursuant to Scottsdale Unified School District policy substitute teachers work on a day-to-day basis with a contract and have no legal rights to continued employment.

50. A substitute teacher's employment period starts 20 minutes before the job time starts and ends upon the substitute teacher's checkout from the front office.

51. A substitute teacher's job functions involve maintaining and teaching the lesson plans developed by the classroom teacher.

52. Ms. Hale was the substitute in David's classroom for the hours he was out of class.

53. While in David's classroom, Ms. Hale claimed that she was walking down the aisles between the desks and could see the bottom half of the students reflected in the mirrors.

54. Upon information and belief, Ms. Hale questioned students about the placement and position of the mirrors.

55. Upon information and belief, Ms. Hale was told that they had only been there for a short period of time.

56. Later that evening, Ms. Hale called Michelle Parker, another teacher at Cocopah Middle School.

57. Ms. Parker is not a supervisor at Cocopah Middle School and has no role in dealing with personnel issues or supervision of teachers or substitute teachers.

58. Pursuant to Scottsdale Unified School District policy, Ms. Parker was not the correct person to deal with any of Ms. Hale's complaints and should not have been contacted.

59. Upon information and belief, Ms. Hale contacted Ms. Parker because Ms. Parker had previously served as a private tutor for Ms. Hale's children, and Ms. Hale viewed Ms. Parker as a friend.

60. Upon information and belief, during that call Ms. Hale falsely accused David of being a pedophile and alleged that he strategically placed the mirrors in his classroom for improper sexual purposes.

61. This statement is false. Prior to Ms. Hale's allegations neither David nor anyone else had ever noticed the mirrors reflected the bottom half of students' desks. In fact, pictures taken around this time show the mirrors reflected the top half of the student's desks or the ceiling and were obscured by a desk.

62. Nor was a mirror necessary to see the bottom half of students' desks because the bottom half of the students' desks were viewable simply by looking at the students directly.

63. David has neither used the mirrors to look at students inappropriately nor looked at students inappropriately generally.

64. Upon information and belief, Ms. Hale also stated that David packed the first two rows of seats with girls to enable his alleged pedophilic gratification.

65. This statement is false because David does not tell the students where to sit and allowed students to provide preferences for their own seating.

66. That means the seating in David's class can (and often did) change frequently.

67. Upon information and belief, David's last two classrooms were roughly 66% girls because many of those students attended choir and David's social studies class worked with that elective schedule.

68. Upon information and belief, Ms. Hale also informed her husband, Matthew Hale, that she suspected that David was a pedophile and had strategically placed the mirrors in the classroom for improper sexual purposes.

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

69. Following that phone call, Ms. Hale demanded meetings with Cocopah Middle School's Principal, Joe Olney, and Assistant Principal, Steve Salcito.

70. Upon information and belief, Ms. Hale intended to spread her false allegations against David during these meetings.

**Thursday May 11, 2023**

71. Before school on the morning of May 11, 2023, Ms. Parker visited Principal Olney in his office.

72. During that meeting, Ms. Parker conveyed Hale's statement that from certain angles the mirrors could see the bottom of students' desks.

73. Pictures taken around that time show that one of the mirror's views was obscured by a desk and the other reflected the tops of student's desks and the ceiling.

74. Ms. Parker relayed that Ms. Hale falsely alleged that David used these reflections for sexual gratification.

75. Assistant Principal Salcito was present during this conversation.

76. After Ms. Parker left the office, Principal Olney directed Assistant Principal Salcito to meet with David and have the mirrors moved.

77. Following the meeting, Assistant Principal Salcito told David that a "parent" had made a complaint regarding the placement of the mirrors in the front of the room, and they needed to be moved.

78. Assistant Principal Salcito did not inform David that the complaint was that the bottom of students' desks were reflected from certain angles.

79. Upon information and belief, Assistant Principal Salcito looked at the mirrors from different angles and did not see the reflections Ms. Hale alleged.

80. Nor did Assistant Principal Salcito say anything else indicating that moving the mirrors was an immediate priority.

81. After this conversation, the school day began, and David planned to move the mirrors later in the day.

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

82. During the first period of that school day, Principal Olney spoke with Ms. Hale.

83. During that conversation, Ms. Hale stated that she did not want David to know that she "turned him in" and falsely alleged that David purposefully placed the mirrors in a way to view students inappropriately.

84. This statement was false. David did not place the mirrors to view students inappropriately and as pictures of the classroom from the time reveal the mirrors' reflections were either obscured by a desk or reflected the top of students' desk and the ceiling.

85. Nor was a mirror necessary to see the bottom half of students' desks because the bottom half of the students' desks were viewable simply by looking at directly at the desk.

86. David has never used mirrors to look at students inappropriately nor has he ever looked at students inappropriately in general.

87. Ms. Hale's belief was based on nothing.

88. These allegations had no support whatsoever, and Ms. Hale cannot identify any reason to believe that David intentionally placed the mirrors to view students inappropriately.

89. Following the meeting with Ms. Hale, Principal Olney initiated an investigation to determine the veracity of her claims.

90. Immediately following the meeting, Principal Olney met with David in his classroom.

91. During that visit, Principal Olney told David that a parent had accused him of placing the mirrors in the front of the classroom for inappropriate purposes.

92. A little later in the conversation, Principal Olney confirmed that it was Ms. Hale that had made the allegation.

93. David was taken aback by Ms. Hale's allegations.

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

94. These statements were false. David had never used the mirrors for any inappropriate purposes or viewed any students inappropriately.

95. David told Principal Olney that he had been warned previously about a substitute teacher causing problems and he wondered if Ms. Hale was “the pain.”

96. David based this statement on information that a 6th grade math teacher, Ms. Parker, had told him that 2 or 3 weeks earlier.

97. At that time, Ms. Parker had stated a substitute had been “snooping around classrooms” and was “looking” for indications that teachers were instructing students on “Critical Race Theory” (“CRT”).

98. While visiting the class, Principal Olney looked at the mirrors and determined that from a few limited angles the bottom of the students’ desk could be seen.

99. Principal Olney had to look from a variety of locations and positions to determine if this reflection was possible.

100. Principal Olney learned that from a single limited spot a portion of the bottom of a desk could be seen.

101. David had never been in that position before because he does not go amongst the desks and provides instructions from the front of the class.

102. Viewing the mirrors from the front of the class would not reflect the bottom half of the students’ desks.

103. Principal Olney then showed David the reflection.

104. This was the first time David had ever seen the mirror from these angles and did not have any objections to removing the mirrors to avoid any further conflict.

105. David and Principal Olney then flipped the mirrors around so the reflective side would be towards the wall.

106. David told Principal Olney that he intended to hang the mirrors in the corner of the classroom but was only waiting until he had the proper hardware.

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

107. After being told this, Principal Olney told David that he could not hang the mirrors up himself and instead needed to place a work order in the school's system to ensure that the mirrors are mounted correctly.

108. Immediately following Principal Olney's visit, Beth McMahon, another social studies teacher, came into David's classroom.

109. David relayed to her what he had just been told by Principal Onley and stated that he was stunned someone had accused him of voyeuristic pedophilia.

110. At the end of the school day, Ms. Parker went to Principal Olney's office and complained that Ms. McMahon had gone into the lunchroom that day and said Hale was a "CRT parent" and advised other teachers not to use her as a substitute.

111. David was not present in the lunchroom and was unaware Ms. McMahon had made these statements.

112. Ms. Parker then blamed David for attempting to "tarnish [Ms. Hale's] reputation."

113. That night, Principal Olney received two emails.

114. The first one was from the school district's human resources department asking for follow-up information about the mirrors.

115. The second was from Ms. Hale, who was demanding a meeting with Principal Olney about her allegations.

**<u>Friday May 12, 2023</u>**

116. Principal Olney met Ms. Hale the next day during the first period.

117. During the meeting, Ms. Hale stated she had heard from Ms. Parker that she had been labeled a "CRT parent" in the lunchroom.

118. Ms. Hale erroneously blamed David for these for these statements.

119. In fact, Ms. McMahon had made these statements.

120. Ms. Hale knew this statement was false, later acknowledging that Ms. McMahon made the statement.

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

121. But the Hales continued to blame David for calling her a "CRT parent" and "right-wing extremist."

122. It was clear from Ms. Hale's tone that she was furious she had been labeled a "CRT parent."

123. Ms. Hale also expressed anger because she believed David had labeled her a "right wing extremist."

124. She then stated that she was very upset and wanted to know how to make a complaint against David, whom she believed had called her a "CRT parent."

125. Upon information and belief, Principal Olney stated that Ms. Hale could file a complaint with the district's human resources department to address her concerns about being called a "CRT parent."

126. Upon information and belief, Principal Olney believed Ms. Hale was going to file a complaint, regarding her belief that David had called her a "CRT parent."

127. Upon information and belief, Ms. Hale actively ignored Principal Olney's recommendation to file a complaint with the district's human resources department and elected to file a complaint using a process only available to parents.

128. During second period, Principal Olney had a follow-up meeting with David to investigate Ms. Hale's allegations.

129. Principal Olney asked David how long the mirrors had been at the front of the classroom.

130. David informed him that the mirrors had only been under the whiteboard at the front of the class for about two weeks, as best he could recall.

131. David reiterated that he was only keeping the mirrors at the front of the classroom until he could get the hardware to hang the mirrors up.

132. Principal Olney reiterated that for safety purposes, David needs to place a work order for the mirrors to be hung up.

133. At this point, David and Principal Olney decided it would be better if David just took the mirrors home.

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

134. Principal Olney then asked if David had told other teachers that Ms. Hale was a "CRT parent."

135. David said that he spoke with one teacher, Ms. McMahon, about Ms. Hale's allegations.

136. But David had never called Ms. Hale a "CRT parent" or "right-wing extremist."

137. After this discussion, David agreed that he would not talk about Ms. Hale any further.

138. Principal Olney then performed an extensive review of parent and student complaints to determine if any had involved David, his classroom, or the mirrors.

139. Upon information and belief, Principal Olney took several additional steps to investigate Ms. Hale's accusation.

140. Principal Olney confirmed that no parent or student has made any prior complaints about David.

141. After this investigation, Principal Olney called human resources to report his findings.

142. First, he told human resources that he found no evidence or indication that the mirrors were used for improper purposes.

143. Then he confirmed that David moved the mirrors as soon as he was notified about the issues with the mirrors' placement.

144. After this day, Ms. Hale did not act as a substitute for any further classes and all her defamatory statements were made on her own personal time.

**Saturday May 13, 2023, the Hales Complained to the Scottsdale Unified School District as Parents and Not as Employees.**

145. The next day, Ms. Hale filed a "KEB" complaint with Scottsdale Unified School District.

146. The KEB Complaint process is only available for parents to use to file a complaint with the district.

147. School and district employees are not authorized to use the KEB complaint process to make misconduct allegations against other employees.

148. Scottsdale Unified School District makes clear that the KEB complaint is for "Public Concerns/Complaints."

149. Ms. Hale was trained on, and knew or was aware of, the proper process and procedures to make a misconduct complaint about an employee.

150. Ms. Hale consciously disregarded that process to file a KEB complaint.

151. Upon information and belief, Mr. Hale co-wrote the allegations in the "KEB" complaint.

152. The use of the "KEB" process indicates that the Hale's were acting in their capacity as parents.

153. In the "KEB" complaint, the Hales stated:

A. That she could see student's intimate areas because "most [students] had their legs open since they were in 6th grade and hadn't developed proper sitting posture yet."

B. "I expressed my concern for the students who had been unknowingly observed in those mirrors and questioned how long the mirrors had been there."

C. "I empathized with those students in the front rows, as it felt like their privacy had been violated in multiple ways."

D. "Mrs. Parker called me and confided in me that Mr. Faulkner had been spreading false rumors among the teachers, claiming that I was a right-wing extremist whose sole purpose was to expose teachers who taught critical race theory."

E. "It's typical for guilty individuals to deflect attention away from themselves and make baseless accusations."

F. "I am deeply concerned about the consequences of this situation, as well as the potential damage to my reputation, my children's reputation at this school, and the reputation of the school itself."

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

G. The Hales also stated they were concerned that "the things Mr. Faulkner is saying about me that I'm a right-wing extremist and my sole purpose was to expose the teachers who teach critical race theory."

H. Ms. Hale also acknowledged that she was filing the complaint because "this is of course affecting my family . . . my children are at this school where they must see this teacher and he knows that I'm their mom, and he is trying to damage my reputation."

I. The Hales also stated that they were "deeply worried for my friends' daughter" expressing concerns for "other kids who will be attending Cocopah next year and potentially be in [David's] class. I believe he is a threat to children[.]"

154. In writing and publishing these allegations, the Hales implied that David was a pedophile and was guilting of looking at children inappropriately in mirrors (a violation of Arizona law).

155. The Hales also explicitly stated that David was a danger to children at the school.

156. These statements about David were false. David had never used the mirror to view students inappropriately, David was not a danger to children, and David was not guilty of any wrongdoing.

157. These statements show that the Hales filed the complaint because they believed that David had called Ms. Hale a "CRT parent" and "right-wing extremist."

158. These statements also indicate that the Hales were acting due to their concerns as parents.

159. Upon information and belief, the Hales drafted this complaint on their personally owned computer, sent the email with the complaint using Ms. Hale's personal email address, and took all these actions on their own personal time.

160. The same day, Principal Olney received a copy of this complaint. He then provided the district with a timeline of events and the results of his investigation.

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

161. Around this time, the Scottsdale Police Department began an investigation at Principal Olney's request.

162. Officer Stacy Dyer, a School Resource Officer with the Scottsdale Police Department, was assigned to the case.

163. Upon information and belief, Ms. Hale never contacted law enforcement or the Department of Child Safety about her accusations.

**The Scottsdale Police Department Investigates and Clears David of Any Wrongdoing**

164. Officer Dyer investigated the Hales' allegations.

165. Officer Dyer questioned David in her office.

166. David participated in the interview with Officer Dyer openly, voluntarily, and to put an end to these allegations.

167. After finishing questioning David, Officer Dyer reviewed the administration files and determined that there had never been any complaints about David or the mirrors prior to this event.

168. Upon information and belief, Officer Dyer took several additional steps to investigate these allegations.,

169. After her investigation, Officer Dyer determined that no further action was necessary based on the Hales' accusation.

170. Officer Dyer's determination was approved by her supervisor at the Scottsdale Police Department, Sergeant Marc McCoy.

171. Officer Dyer informed Principal Olney that "no crime had been committed" and cleared David of any wrongdoing.

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

**The Hales Refuses to Accept the Results of these Investigations and Make Further Damaging Accusations Outside the Course and Scope of Ms. Hale's Employment**

172. On June 1, 2023, Principal Olney and Assistant Principal Salcito met with the Hales and explained that Officer Dyer had investigated, cleared David of any wrongdoing, and would not be moving forward with any additional actions.

173. During that conversation, Principal Olney outlined his investigations and findings clearing David, and concluding that there was nothing to corroborate the Hales' accusations that David had used the mirrors to inappropriately look at students or that David was a danger to students.

174. Principal Olney also stated that Officer Dyer had conducted an investigation clearing David and concluded that there was no evidence that David used the mirrors to inappropriately look at students.

175. Officer Dyer had explicitly informed Principal Olney that there was no crime committed.

176. Principal Olney conveyed this conclusion to the Hales.

177. During the meeting, Mr. Hale made statements that he believed this situation needed to be escalated, implying that David had engaged in inappropriate sexual behavior.

178. Mr. Hale had no basis to make this statement.

179. This statement was false. David had never engaged in any inappropriate sexual behavior with students.

180. Mr. Hale also implied that David had threatened him and that he and his family needed protection.

181. This statement was false. David has never threatened the Hales or their family.

182. During the meeting, Mr. Hale stated that they needed to take action because "Callaway had him" as a teacher.

183. During the Meeting, Ms. Hale stated they felt obliged to take action because "I know so many girls that are coming up next year . . . so I just can't not tell them," continuing, "and I just have that due process, you know, that motherly gut instinct" before finishing "it takes a village to protect our kids."

184. Before ending the meeting, Ms. Hale reiterated that she was angry because she believed that David has referred to her as a "CRT parent" and "right-wing extremist."

185. Upon information and belief, if Ms. Hale was acting within the scope and course of her employment, she had a duty to maintain confidentiality of the allegations.

186. Upon information and belief, neither Principal Olney nor Scottsdale Unified School District administrators instructed Ms. Hale about a confidentiality duty because they understood that she was acting as a parent in making her complaint.

187. Neither Cocopah Middle School nor Scottsdale Unified School District have the legal authority to instruct parents to keep complaints confidential.

188. During this meeting, the Hales knew that there was no evidence to support their statements or allegations against David.

189. At this point, two investigations had concluded that David had done nothing wrong, and there was no evidence to support the Hales' allegations.

190. Yet the Hales persisted in making their false accusations against David.

191. Following that meeting, Ms. Hale reached out to the district stating she did not believe there had been an adequate investigation.

192. Ms. Hale sent this statement using her own personal email and outside of any designated work periods.

193. Ms. Hale had no support for this statement, and she knew the statement was false because both the Cocopah Middle School administration and the Scottsdale Police Department had conducted an extensive investigation.

194. In that email, Ms. Hale questioned the investigation and outlined her demands for the investigation, including requiring the Scottsdale Police Department

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

search David's "school devices, cell phones, and home devices" without any probable cause, which would allow them to conduct such a search.

195. Upon information and belief, Ms. Hale sent this email from her home personal email.

196. Upon information and belief, Ms. Hale sent this email from her personal computer on her own personal time.

197. Ms. Hale made this statement knowing that the Scottsdale Police Department had already conducted an investigation and determined no crime had been committed.

198. The Hales also insinuated that David was violent and posed a threat to her family.

199. The Hales knew this statement was false because they had never received any threats from David or anyone else acting on his behalf.

200. The Hales stated that she wanted to know "how the district plans to ensure our safety."

201. The email and the demand behind it were driven by the Hales' fury over her mistaken belief that David had "begun referring to [Ms. Hale] as a 'critical race theory parent and right-wing extremist.'"

202. Despite these reasonable investigations of the Cocopah Middle School administration and Scottsdale Police Department, the Hales again escalated her complaint to the Scottsdale Unified School District's Governing Board.

203. The Hales escalated their complaint to the Governing Board before the district had an opportunity to issue its findings.

204. When the Hales decided to escalate their complaint, they were acting on their own personal time and undertook this action as private citizens and not as government employees.

205. On July 25, 2023, the district issued its findings clearing David of any wrongdoing, stating "the District administration has not uncovered any violation of District Policies/Regulations with respect to [David's] actions."

206. The district based this investigation off interviews with more than a half a dozen potential witnesses, including David's student teacher who spent hundreds of hours in the classroom.

207. There was not a single witness that stated that David had ever misused the mirrors to look at students.

208. Any type of inappropriate behavior using the mirrors would have been a violation of district policies and regulations.

209. The district noted that the "investigation included a review of all documents submitted related to this matter, the involvement of the Scottsdale Police Department, a visit to the school and the classroom, and interviews with current and former employees with knowledge about this matter."

210. On July 25, 2023, the district emailed its findings to the Hales and explained that there was no evidence to support her claims that David was misusing the mirrors to inappropriately look at students, that David was a danger to students, or that David was guilty of any wrongdoing.

211. Upon information and belief, the district emailed its findings to Ms. Hale's personal email because she had used her personal email for all communications with the district and the district understood that she was acting in her capacity as a parent.

212. This was the third extensive investigation that proved the Hales' accusations were false and lacked any support.

213. On August 2, 2023, the Hales met with Scottsdale Unified School District's Associate Superintendent, Dr. Benson, about her allegations.

214. Upon information and belief, Ms. Hale attended this meeting while she was not being paid as a substitute teacher and attended the meeting during her own personal time.

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

215. Mr. Hale made statements implying that David was guilty of the accusations Ms. Hale was making.

216. Namely, that David was guilty of inappropriately using mirrors to look at student's intimate areas.

217. This statement was false, and as shown above had been conclusively disproven by three separate investigations, including an investigation that had concluded less than a week prior.

218. Mr. Hale knew this statement was false and that it did not have any support.

219. During the meeting, Mr. Hale stated "I think when someone, when their first reaction to someone questioning something in the classroom and their first reaction is to deflect it and make a comment like that about Veronica, about anyone else, it sends a, a signal that's like, hey, something, there's something going on here."

220. Mr. Hale also made a statement implying that David placed the mirrors strategically so he could look at students' intimate areas while sitting at his desk.

221. This statement was false, and as shown above had been conclusively disproven by three separate investigations, including an investigation that had concluded less than a week prior.

222. Mr. Hale also asked when to get the state board of education involved "to deal when an incident" because it "involves a child, particularly something of, of ***this nature*** that could be considered predatory and or a felony."

223. Mr. Hale recognized that he and Ms. Hale were alleging that David had engaged in felonious activity involving a child.

224. Mr. Hale knew this statement was false and had been refuted by three investigations. In fact, the Scottsdale Police Department had specifically concluded that no crime had been committed.

225. Mr. Hale also recognized that he and his wife were accusing David of engaging in predatory behavior.

226. These statements were false. David had never engaged in any type of predatory behavior with children or anyone else.

227. During the meeting, Ms. Hale stated, "how can I let these precious families and girls go into this class knowing what I know . . . I mean, *some of our dear friends could not wanna be friends with us anymore because not sharing this information with em*."

228. This along with other statements shows that Ms. Hale had filed the KEB complaint in her capacity as a parent.

229. Dr. Benson did not tell Ms. Hale that she had a duty to maintain confidentiality because Dr. Benson understood that Ms. Hale was making this complaint as a parent, and unlike employees, parents do not have a duty of confidentiality

230. During that meeting, they again reiterated all their earlier accusations.

231. They also reiterated that they were filing the complaint as parents because "we have like some best friends whose daughters are going there [Cocopah Middle School]."

232. Ms. Hale also stated, "the media would eat this up because all they want are negative stories."

233. During this meeting, Dr. Benson again refrained from informing Ms. Hale that she had a duty to maintain confidentiality because Dr. Benson believed Ms. Hale was acting as a parent and not an employee.

234. Before this meeting ended, Ms. Hale again stated that she was angry because she believed David had called her a "CRT parent" and "right-wing extremist."

235. At this time, the Hales had gone through three investigations and knew their allegations were false and without support.

236. On August 3, 2023, Dr. Benson emailed Ms. Hale.

237. Upon information and belief, Dr. Benson emailed Ms. Hale at her personal email address.

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

238. In the email, Dr. Benson explained (1) the mandatory reporting requirements under A.R.S. § 13-3620; (2) that the investigation conducted into the complaint was "extensive"; (3) information about the nature of the investigation, namely that the report did not constitutes a public record and would not be disclosed; (4) and information about an upcoming Board of Governors meeting to consider her complaint.

**The Hales Act Outside the Course and Scope of Ms. Hale's Employment By Publicizing Their Accusations to the Media and the Community At Large**

239. Following her meeting with the Associate Superintendent, the Hales continued to incite the community against David.

240. The Hales continued their campaign against David despite knowing that three investigations had concluded their allegations were false and had no support whatsoever.

241. Upon information and belief, the Hales continued to engage in these behaviors out of personal animus for David because they believed he referred to Ms. Hale as a "CRT parent" and "right-wing extremist."

242. To achieve this goal, the Hales began communicating with local media outlets to express her accusations.

243. Upon information and belief, Ms. Hale was acting on her own personal time and using her own personal email and phone to communicate with local media outlets.

244. Upon information and belief, the Hales sent emails and made phone calls to local media outlets conveying their belief that David had used the mirrors in the classroom to view students' intimate areas.

245. These statements were false. And the Hales knew they were false and had been refuted in three separate investigations.

246. On August 4, 2023, Ms. Hale sent out an email to numerous parents she personally knew accusing David of engaging in voyeuristic pedophilia by looking at girls in the mirrors inappropriately.

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

247. Upon information and belief, Mr. Hale co-wrote the letter and the implications in this letter.

248. Upon information and belief, the Hales drafted this email during their own personal time.

249. Upon information and belief, the Hales sent this email out using Ms. Hale's personal email address.

250. In the letter, the Hales stated:

A. "The mirrors only reflected the lower halves of the students, and unfortunately, most 6th graders don't know how to sit properly and they had their legs open exposing themselves. This image is very hard to get out of my head and extremely disturbing as to think how many times he's seen it."

B. "What's even more disturbing and upsetting is the first two rows of desks were all girls and my next period was the same way. (girls only in the first two rows)[.]"

C. "Instead of going up to observe the classroom and see first hand what I saw in those mirrors, viewing the students from the waist down, they simply instructed Mr. Faulkner to remove the mirrors, which he eventually did two days later. **Removing all evidence**." (Emphasis in original).

D. "I would also like to add when Mr. Faulkner discovered I had reported him, he spread to the 6th grade team of teachers that I was a "Critical Race Theory Parent" who was there to expose the school and told the team not to use me as a substitute. That was a HUGE red flag for me deflecting the situation and trying to damage my reputation to the school."

E. "**I finally found out yesterday August 2nd, 2023 that Mr. Faulkner will not only be staying at Cocopah this year but will also be the new JV volleyball coach this semester**. Which means he could potentially be coaching the same girls that he was looking at in those mirrors." (Emphasis in original).

F. "It takes a village to protect our children."

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

G. "I've gone over this situation over and over and if I could go back in time I would have called the police."

H. "When did it become acceptable for teachers to view students from the waist down in the classroom where they are suppose [sic] to feel safe."

I. "I don't know ONE parent that would be ok with a teacher having mirrors in front of the classroom that exposed their child's private parts."

J. "My child has to go to school with this teacher next week and see him knowing what he's done."

251. The Hales' accusation that "The mirrors only reflected the lower halves of the students, and unfortunately, most 6th graders don't know how to sit properly and they had their legs open exposing themselves. This image is very hard to get out of my head and extremely disturbing as to think how many times he's seen it" was intended to convey to third parties that David was a predator using the mirrors to view children inappropriately.

252. This would constitute a violation of A.R.S. §§ 13-1424, 13-3019.

253. The Hales knew this statement was false. When the Hales made this statement, they knew it had been refuted by three separate investigations and had no support whatsoever.

254. The Hales also failed to inform readers that three investigations had been conducted, all of which indicated that there was no support whatsoever for the Hales allegations.

255. The Hales' accusation that David "**Remov[ed] all evidence**" was intended to incite the community into believing the veracity of Hale's allegations.

256. This statement also accused David of violating A.R.S. § 13-2809.

257. This statement was also made to imply that David was attempting to destroy evidence because he was guilty.

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

258. While it is true that David removed the mirrors, that was done at the school administration's request. But the Hales implied that David removed the mirrors because he was guilty of some wrongdoing.

259. The Hales also stated that David spread rumors about her, implying that David had expressed an opinion about Ms. Hale in an effort to "deflect[]" attention away from himself.

260. Lastly, the Hales stated that they and their family were in danger because of the allegations they made against David.

261. These statements were intended to imply that David was violent and a threat to the Hales' family.

262. This statement presented to the community at large was made in Ms. Hale's personal capacity.

263. Employees are not permitted under Scottsdale Unified School District rules to spread false and malicious rumors about other employees to the community at large.

264. Any statement on this issue would have been sent out by the Scottsdale Unified School District head office and not by an individual employee.

265. Ms. Hale also acknowledged that she was acting in her personal capacity when she encouraged readers to reach out to her personally with any questions.

266. Upon information and belief, the Hales intended that readers would, and did, contact them at their personal email addresses and phone numbers.

267. Ms. Hale also revealed that the purpose driving her decision to publicly disparage David was because of her friends and desire to protect her personal reputation.

268. Ms. Hale also publicly disparaged David because of her personal desire to harm David's reputation because she believed he called her a "CRT parent" and "right-wing extremist."

269. The Hales also accused David of engaging in inappropriate behavior as the Junior Varsity volleyball coach.

270. This statement was false.

271. Ms. Hale again revealed that her vitriol was directed towards David because she believed he called her a "Critical Race Theory Parent," who other teachers should not use as a substitute.

272. Again, this statement was incorrect.

273. The Hales made this statement despite knowing that Ms. McMahon, and not David, called her a "CRT parent" and encouraged other teachers not to use her as a substitute.

274. The Hales intended to use this argument to incite emotion in the readers of the email.

275. The Hales also revealed that they were making this statement as parents stating, "[the] whole situation has been very stressful for not just myself but my family. My child has to go to school with this teacher next week knowing what he's done."

276. The Hales also sent the letter to the Facebook page, "Recall Them All," who posted the letter publicly for everyone in the community to see.

277. Upon information and belief, the Hales sent the letter to "Recall Them All" using their own personal email address, during their own personal time.

278. Facebook reflects that the "Recall Them All" community consists of 230 members.

279. "Recall Them All" censored David's name on the initial post, but later disclosed his identity.

280. The Hales did not censor David's name or tell anyone else to censor David's name.

281. The Hales sent this email to the community at large and "Recall Them All" because they intended to convey to readers that David was a criminal, pedophile, and a threat to children.

282. This is the interpretation that readers of the Hales letter understood.

283. In response to the Hales' letter, one person posted on the "Recall Them All" Facebook page, "Why are we sensoring [sic] this pedos name??"

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

284. Another person stated the district administrator "has no problem with protecting pedos." This comment was posted under the Hales' letter.

285. In response to the Hales' letter, another poster stated, "Perversive behavior has no place in the classroom nor on the School Board!! . . . This teacher needs to go!!!!!"

286. That same poster later stated, "We were once children and we need to protect everyone's children from predators."

287. On August 4, 2023, the Hales sent Dr. Menzel, the Scottsdale Unified School District Superintendent, an email reiterating her false allegations against David.

288. Upon information and belief, Mr. Hale co-authored that email.

289. Upon information and belief, the Hales drafted this email on their own personal time and sent it using Ms. Hale's personal email address.

290. As a result of this email, the district re-scheduled the hearing on the Hales' complaint from August 29, 2023, to August 8, 2023.

291. This change hindered David's ability to defend himself.

292. Between August 3, 2023, and August 8, 2023, the Hales communicated with multiple parents about their accusations in person, over the phone, and via text message.

293. Upon information and belief, all these calls, text messages, and in person meetings occurred during Ms. Hale's personal time and using her personal communication devices.

294. Upon information and belief, the Hales, both Mr. Hale and Ms. Hale, accused David of inappropriate behavior with students during these conversations.

295. Upon information and belief, the Hales accused David of being a pedophile during these conversations.

296. Upon information and belief, the Hales did not restrict her comments to the placement of the mirrors, but generally accused David of being a pedophile in these meetings, phone calls, and text messages.

297. Upon information and belief, the Hales also stated that David was engaged in felonious activity in these meetings, phone calls, and text messages.

298. Upon information and belief, the Hales accused David of being a child predator during these meetings, phone calls, and text messages.

299. Upon information and belief, the Hales communicated with Amber Parks about their allegations and the letter sent to the community.

300. Upon information and belief during those communications the Hales accused David of using the mirrors to inappropriately view students' intimate parts, of being a pedophile, and of being a threat to children generally.

301. These statements are false and defamatory.

302. These statements were made in Ms. Hale's personal capacity.

303. Scottsdale Unified School District employees are not permitted or allowed to make statements regarding other employee's alleged wrongdoing.

304. Upon information and belief, the Hales communicated with Katie Smith about their allegations and the letter sent to the community.

305. Upon information and belief during those communications the Hales accused David of using the mirrors to inappropriately view students' intimate parts, of being a pedophile, and of being a threat to children generally.

306. These statements are false and defamatory.

307. These statements were made in Ms. Hale's personal capacity.

308. Scottsdale Unified School District employees are not permitted or allowed to make statements regarding other employee's alleged wrongdoing.

309. Upon information and belief, the Hales communicated with Amy Coxhead about their allegations and the letter sent to the community.

310. Upon information and belief during those communications the Hales accused David of using the mirrors to inappropriately view students' intimate parts, of being a pedophile, and of being a threat to children generally.

311. These statements are false and defamatory.

312. These statements were made in Ms. Hale's personal capacity.

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

313. Scottsdale Unified School District employees are not permitted or allowed to make statements regarding other employee's alleged wrongdoing.

314. Upon information and belief during those communications the Hales accused David of using the mirrors to inappropriately view students' intimate parts, of being a pedophile, and of being a threat to children generally.

315. These statements are false and defamatory.

316. These statements were made in Ms. Hale's personal capacity.

317. Scottsdale Unified School District employees are not permitted or allowed to make statements regarding other employee's alleged wrongdoing.

318. Upon information and belief, the Hales communicated with Stacy Randall about their allegations and the letter sent to the community.

319. Upon information and belief during those communications the Hales accused David of using the mirrors to inappropriately view students' intimate parts, of being a pedophile, and of being a threat to children generally.

320. These statements are false and defamatory.

321. These statements were made in Ms. Hale's personal capacity.

322. Scottsdale Unified School District employees are not permitted or allowed to make statements regarding other employee's alleged wrongdoing.

323. Upon information and belief, the Hale's communicated with Jade Izzett about their allegations and the letter sent to the community.

324. Upon information and belief during those communications the Hales accused David of using the mirrors to inappropriately view students' intimate parts, of being a pedophile, and of being a threat to children generally.

325. These statements are false and defamatory.

326. These statements were made in Ms. Hale's personal capacity.

327. Scottsdale Unified School District employees are not permitted or allowed to make statements regarding other employee's alleged wrongdoing.

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

328. Upon information and belief, these are only a small number of the communications the Hales engaged in during this period.

329. As a result of the Hales extensive communications, Principal Olney called David at home to inform him that he was fielding numerous phone calls from parents requesting that their children be moved out of David's classroom and calls from other anonymous callers.

330. Upon information and belief, Principal Olney was dealing with anonymous callers issuing threats, demanding violent retribution against David.

331. Upon information and belief, these anonymous callers were also stating they believed David was a "pedo."

332. Upon information and belief, prior to the Scottsdale Unified School District Governing Board's meeting, the Hales sent an email to "Recall Them All" informing the community that the meeting regarding David has been moved up.

333. Upon information and belief, the Hales sent this email during their own personal time and using their personal email addresses.

334. Upon information and belief, in that communication the Hales repeated their allegation that David was using the mirrors to inappropriately view students' intimate areas and that David was a pedophile who was a danger to children.

335. But for the Hales' efforts to publicize David's identity and their accusations, David's name would not have been public, and the Scottsdale Unified School District's Governing Board would have been permitted to resolve this issue confidentially.

336. Upon information and belief, the Governing Board's agenda would simply have read something innocuous such as "meeting to resolve KEB complaint" without further publication of the Hales' false accusations.

337. Despite the attempts to maintain confidentiality, the Hales' letter, phone calls, text messages, and in person communications widely publicized David's identity.

338. At the Governing Board meeting, Amber Parks spoke, saying that she had spoken with Ms. Hale who stated she could "see up girls skirts" and that David had

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

purposefully put girls with skirts in the front row. Amber Parks' statement affirmed that she believed the Hales' false allegations.

339. The statements the Hales made to Amber Parks were false. And the Hales knew they were false at the time they accused David of this inappropriate behavior.

340. At the Governing Board meeting, Susan Winder stated that she believed the statement that David had used mirrors in the room to look up girl's skirts and "thank[ed] god, that my grandson is a male and doesn't have to deal with that issue."

341. Prior to speaking, Susan Winder had signed up to speak on a different topic, but changed her subject because believed the Hales' false accusations.

342. At the Governing Board meeting, Katie Smith spoke on behalf of Ms. Hale. Katie Smith stated that from the "moment she read the email [from Hale] she felt disgusted and uneasy," continuing that she was "grateful" that her child was not in the classroom of this "predator."

343. Katie Smith also asked why parents were not notified about an "alleged predator" at the school.

344. Katie Smith based her belief that David was a "predator" based on the Hales' letter.

345. At the Governing Board meeting, Sally Gnirk spoke and stated that she believed the Hales' allegations that David used the mirrors to view girls inappropriately.

346. At the Governing Board meeting, Amy Coxhead stated that she was speaking on behalf of, and as a friend of, Ms. Hale. She stated that Ms. Hale told her everything as a friend the week prior and that she believed the Hales' allegations that David used the mirrors to inappropriately look at girls.

347. At the Governing Board meeting, Stacy DeMaranville stated that she received the Hales' letter and that the Hales had alleged "serious accusations" against David. She also stated that an investigation needed to be completed.

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

348. Upon information and belief, Stacy DeMaranville stated an investigation needed to occur because the Hales had intentionally withheld the three investigations that refuted the Hales' accusations.

349. At the Governing Board meeting, Jade Izzett spoke on behalf of Ms. Hale, as one of her friends who "loves and adores" her. Jade Izzett specifically refuted that Ms. Hale was a "CRT parent."

350. Upon information and belief, Jade Izzett specifically mentioned the "CRT parent" allegation because she knew that was driving Ms. Hale's actions.

351. Upon information and belief, Jade Izzett believed the Hales' accusations against David.

352. On August 8, 2023, the Hales attended the Scottsdale Unified School District Governing Board's meeting and made her accusations directly to the Governing Board.

353. During the Scottsdale Unified School District Governing Board's meeting, Mr. Hale made accusations mirroring those made by Ms. Hale.

354. Upon information and belief, Mr. Hale stated that David was using the mirrors in the classroom for improper sexual purposes.

355. Upon information and belief, Mr. Hale stated that he believed David was using the mirrors to inappropriately stare at students who "had not learned proper sitting etiquette."

356. Upon information and belief, Mr. Hale told anyone that would listen that Daivd should be "ashamed" of himself.

357. Ms. Hale also encouraged several friends to make the same baseless allegations in phone calls, text messages, and emails to the Governing Board.

358. These allegations were so numerous, venomous, and violent, the district felt that it was necessary to provide extra security to ensure David's safety at the Governing Board's meeting.

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

359. After hearing the Hales' accusations, the Governing Board voted to deny Ms. Hale's appeal.

360. Thus, affirming the determination that "the District administration has not uncovered any violation of District Policies/Regulations with respect to [David's] actions."

361. Following the vote, the Hales repeated their accusations that David was using the mirror to engage in voyeuristic pedophilia to various media outlets.

362. Ms. Hale told the media outlets, "[u]ntil he's not in the classroom and until he's not coaching these girls, it's really hard for me to not lose sleep over this."

363. In making this statement, Ms. Hale implied that he statements that David was engaged in voyeuristic pedophilia were accurate and true, despite multiple investigations concluding differently.

364. Upon information and belief, the Hales intentionally withheld information regarding the three investigations that cleared David of any wrongdoing when talking to the media.

365. In fact, the Hales purposefully withheld any information about the investigations to perpetuate their accusations.

366. Upon information and belief, Ms. Hale made these statements during her own personal time.

367. The same day, Hale sent an email, which was later uploaded to Facebook, thanking parents for their emails, phone calls, and supporting her baseless accusations.

368. Upon information and belief, Mr. Hale co-authored this letter.

369. Upon information and belief, the Hales authored this letter on their personal computer, during their own personal time, and sent it out using Ms. Hale's personal email address.

370. Specifically, the Hales' email stated:

A. "I do know that I have always had one thing in mind when I sent out my email on Friday and that was to protect the kids, get him out of the classroom, and get him moved from being the JV volleyball coach."

B. "we will still have to keep fighting for the kids because sadly it's not going to stop here. It will just happen at another district or school."

371. The Hales also sent this letter to "Recall Them All" to be posted on the organizations Facebook page.

372. Upon information and belief, the Hales sent the letter to "Recall Them All" using Ms. Hale's personal email address on her own personal time.

373. In response to this letter, a reader stated "I want to thank the academy for the special shout out from the 'alleged' little girl mirror gawker's support group in their public comments on tonight's board meeting. I take special pride in the fact that this wonderful spokesperson from the 'alleged' little girl mirror gawker noticed my observation of Menzel's support for seemingly pedo behavior. Thanks again, 'alleged' little girl mirror gawker supporters!"

374. Another poster criticized the Governing Board saying, "A male teacher can coincidentally place mirrors in a way that lets him see up little girls [sic] skirts (no problem)."

375. In response to the Hales accusations, another poster stated, "Parents need to act. Boycott that teacher and move your child to another." Upon information and belief, this statement was made about David.

376. At least two media outlets, the Scottsdale Progress and the Daily Independent, repeated the Hales' accusations.

377. On August 15, 2023, the Cocopah Middle School hosted a "Curriculum Night," during which parents were invited into the school and classrooms to meet their children's teachers.

378. Due to the Hales' allegations, the district ordered additional security on campus, and in David's classroom directly, out of fear for his safety.

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

**Hale Continues Her Crusade Against David**

379. The day before the Governing Board denied the Hales' appeal, they filed a complaint with the Arizona State Board of Education outlining their knowingly false accusations of inappropriate behavior.

380. This is the first and only time she notified the Arizona State Board of Education about her accusations.

381. This notification occurred roughly 89 days after she first raised the issues with Principal Olney.

382. Ms. Hale is requesting that David's teaching certificate be revoked, depriving him of his ability to earn a living.

383. Ms. Hale filed this complaint even though David was cleared by three different investigations.

384. The Hales also intentionally left out information about the investigations by the Scottsdale Police Department, Cocopah Middle School's administration, and Scottsdale Unified School District.

385. Despite being cleared of any wrongdoing, David resigned from Cocopah Middle School due to the fear and anger the Hales incited against David.

386. After his resignation, Principal Olney provided David with a letter of recommendation.

387. In the letter of recommendation, Principal Olney lauded David's dedication to both students and fellow educators.

388. "Recall Them All" posted about David resigning from his teaching position.

389. In response, a reader stated, "We cannot have perverts on school boards and in classrooms." Upon information and belief, this reader based their belief that David was a "pervert" on the Hales' letter.

390. Upon information and belief, the Hales intended to spread false and malicious rumors that David was a child predator and a danger to children by stating that he used mirrors in his classroom to inappropriately view children's intimate areas.

391. The Hales knew these allegations were false and that the accusations had been refuted by three separate investigations.

392. Despite the investigations, the Hales continued to spread these false accusations and withhold any information related to the investigations.

393. At least a dozen people who read the Hales' letter or spoke to them personally, interpreted the Hales' accusations to mean David was a pedophile, predator, or danger to children.

394. These individuals even referred to David as a "pedo" and "predator," just as the Hales intended.

395. The State Board of Education has reviewed, investigated, and rejected the Hales' allegations that David used the mirrors for improper purposes.

396. In coming to this resolution, the State Board of Education made the same determination as the three investigations that preceded it.

397. Upon information and belief, aside from May 10 and May 11, 2023, Ms. Hale was not actively employed by Cocopah Middle School or the Scottsdale Unified School District.

398. Upon information and belief, aside from events on those days, all Ms. Hale's statements were made during her own personal time and not during any employment period with Cocopah Middle School or Scottsdale Unified School District.

399. Upon information and belief, all emails sent by the Hales were sent from Ms. Hale's personal email address.

## COUNT I

## Defamation

400. David repeats and restates all allegations as if fully set forth herein.

401. The Hales' published, through various statements, insinuations, implications, and innuendos to third persons accusing David of strategically placing mirrors in his classroom to inappropriately view children.



Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

402. David seeks liability for Ms. Hale's statements made to individuals outside of Cocopah Middle School and in her personal capacity.

403. For example, Ms. Hale is liable for defamatory statements she made to the Scottsdale, Arizona community at large, posted on social media, made to media outlets, and made to individuals either online or through text messages or phone calls.

404. The Hales did not make these statements in good faith and instead made them with actual malice.

405. Ms. Hale sought to destroy David's reputation in retaliation for her belief that David called her a "CRT parent" and "right-wing extremist."

406. David seeks liability against Mr. Hale for all statements he made regardless of their location.

407. The type of behavior the Hales accused David of would be a violation of Arizona law and would be considered a crime involving moral turpitude.

408. All such insinuations, statements, insinuations, implications, and innuendos alleged herein were false and defamatory, and brought David into disrepute, contempt, or ridicule.

409. None of the statements, insinuations, implications, and innuendos were privileged.

410. If any of the statements, insinuations, implications, and innuendos were privileged, then Hale exceeded that privilege because these statements were made with actual malice.

411. The Hale published these statements in retaliation for their belief that Ms. Hale was being called a "CRT parent" and "right-wing extremist."

412. The Hales published these statements, insinuations, implications, and innuendos knowing that they were false, with reckless disregard for the truth, or negligently by failing to investigate and ascertain the truth.

413. The Hales' statements, insinuations, implications, and innuendos were made after multiple investigations cleared David of wording and were contrary to the evidence.

414. Each statement, insinuation, implication, and innuendo alleged herein, singularly or in combination, has impeached and continues to impeach the honesty, integrity, and reputation of David.

415. The Hales are liable for presumed damages.

416. All such statements, insinuations, implications, and innuendos were published by the Hales with actual malice and a deliberate indifference or recklessness as to the truth or falsity of any such statements, insinuations, implications, and innuendos for the specific purpose of damaging David's good name, standing, and reputation in the community. Accordingly, David is entitled to an award of punitive damages in an amount sufficient to punish the Hales and deter others from engaging in the same or similar conduct.

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

417. As a direct and proximate result of the Hales' conduct, David has been damaged by being forced to resign from Scottsdale Unified School District.

418. As a direct and proximate result of the Hales' conduct, David has suffered mental anguish, emotional distress, pain and suffering, humiliation, harm to reputation, and loss of enjoyment of life.

## COUNT II

## Intentional Infliction of Emotional Distress

419. David repeats and restates all allegations as if fully set forth herein.

420. The Hales' conduct as described herein is extreme and outrageous.

421. The Hales' actions are extreme and outrageous in part because they have intentionally harassed, threatened, and intimidated David for the last six months simply because they believe David called Ms. Hale a "CRT parent" and advised other teachers not to use Ms. Hale as a substitute.

422. The Hales' actions are extreme and outrageous because they sent communications painting David in a false light to David's school, neighbors, friends, fellow parents at the school, social media websites, various media outlets, and the general community.

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

423. The Hales' actions are extreme and outrageous in part because they continue to accuse David of inappropriate behavior involving children, including telling the community that David uses mirrors to look at children inappropriately, is a danger to children, and is a pedophile.

424. The Hales' actions are extreme and outrageous in part because they are attempting to destroy David's career and reputation.

425. The Hales intended to inflict emotional distress, as evidenced by the language they used in the letters they publicly distributed or used in personal communications.

426. Following the Hales' actions, David has felt obligated to see a counselor to work through the trauma caused by the accusations.

427. The Hales' actions have caused David considerable emotional distress, including:

A. Anxiety, causing piercing stomach pain and digestive issues;
B. Panic attacks, requiring the prescription of medication to control;
C. Depression, requiring the prescription of medication to control;
D. Hypervigilance for physical and emotional safety;
E. Sleep difficulty, including severe insomnia;
F. Inability to focus or concentrate;
G. Heart palpitations, accelerated heart rate, tightness in chest, and chest pain;
H. Feelings of edginess, causing mood swings;
I. Feelings of hopelessness;
J. Hyperventilation episodes;
K. Asthenia, including physical weakness and a lack of energy;
L. Lightheadedness and dizziness;
M. Intrusive memories of traumatic events related to the Hales' false accusations;

N. Extreme fatigue, causing David to stay in bed for hours on end; only leaving to go to work, but immediately returning to bed upon returning home.

428. David has also been forced to adjust his movements to avoid people and places, such as Cocopah Middle School, which trigger these symptoms.

429. These symptoms meet the diagnostic criteria for Post Traumatic Stress Disorder.

430. David has seen his general practitioner and counselor about these symptoms.

431. The Hales have caused financial damage.

432. As a result, David has been damaged in a total amount to be proven at trial.

433. The Hales acted with an evil hand guided by an evil mind, and with such aggravated and outrageous conduct that punitive damages are warranted.

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

## JURY TRIAL DEMAND

David requests a trial by jury on any issue triable of right by a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, David request judgment against Veronica Hale and Matthew Hale, a marital community, as follows:

A. For compensatory damages in a total amount to be proven at trial;

B. For presumed damages in a total amount to be proven at trial;

C. For punitive damages in a total amount to be proven at trial;

D. For an award of costs as allowed by A.R.S. § 12-341 and any other statute and/or law;

E. For an award of attorney fees as allowed by statute and/or law;

F. For pre-judgment interest on all liquidated amounts at the highest rate allowed by law;

G. For post-judgment interest at the highest rate allowed by law;

H. For such other relief as the Court deems proper and just.

Silence, Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

DATED this 22nd day of April, 2024.

**Silence Law Group**

*/s/ Jesse R. Ritchey*
Jeffrey Silence
Jesse R. Ritchey

*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

On April 22, 2024, I **E-FILED** and **E-SERVED** this pleading to:

Quarles & Brady LLP
Haley R. Augur
Haley.Augur@quarles.com
Jeffrey H. Wolf
Jeffrey.Wolf@quarles.com
Attorney for Defendants

/s/ *Jesse R. Ritchey*